**\*\* E-filed October 6, 2009 \*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT OLSZEWSKI, SARA BERTSCH, JACQUELINE MACIA, PHILIP McHALE, and RUSSELL BLACKADAR, individuals,<br><br>    Plaintiffs,<br>        v.<br>SYMYX TECHNOLOGIES, INC. and ELSEVIER, INC., corporations,<br><br>    Defendants. | No. C08-03657 HRL<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>**[Re: Docket No. 38]** |

Defendant Symyx Technologies ("Symyx") acquired MDL Information Systems ("MDL") from defendant Elsevier, Inc. ("Elsevier") through a cash-for-stock transaction. Plaintiffs are former MDL employees who were laid off the day after the Sale Agreement between Elsevier and Symyx closed. As part of the layoff, Symyx offered plaintiffs severance benefits under its plan (the "Symyx Plan") that were less generous than those that had been available from Elsevier (the "Elsevier Plan").

Plaintiffs sued both Elsevier and Symyx on grounds that they improperly denied plaintiffs benefits under the Elsevier Plan, claiming breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. One plaintiff also pled a federal age discrimination claim. Plaintiffs did not serve the original complaint on defendants. Instead, five months later, they amended it as a matter of course to add state age discrimination claims.

Defendants then filed nearly identical motions to dismiss the First Amended Complaint, which this court granted with leave to amend. The Second Amended Complaint ("SAC") eliminated the age discrimination claims and repled plaintiffs' three common law claims as claims under the Employee Retirement Income Security Act ("ERISA"). Defendants now move to dismiss the SAC for failure to state a claim, and they request that this time, the court dismiss the complaint with prejudice. Plaintiffs oppose the motion.[1]

## LEGAL STANDARD

On motion, a court may dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The federal rules require that a complaint include a "short and plain statement" showing plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). Yet a complaint that "do[es] not permit the court to infer more than the mere possibility of misconduct" fails to show such entitlement. *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009). The complaint's well-pled facts must instead "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Consequently, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. A claim is plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Indeed, allegations that are conclusory or that contradict facts in documents attached to the complaint are "not entitled to be assumed true." *Id.* at 1951; *see also Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

## DISCUSSION

**A.    Preliminary Matters**

    **1.    Exhaustion**

The defendants assert that the complaint fails because the plaintiffs did not plead exhaustion of their administrative remedies. The Symyx Plan includes a robust procedure for appealing decisions concerning benefits, but the Elsevier Plan does not. The plaintiffs have chosen to assert

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties who have appeared have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

2

claims only as to the Elsevier Plan, and as such, a failure to plead exhaustion—when there are no procedures to exhaust—does not bar plaintiffs' claim. *Diaz v. United Agr. Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1484 (9th Cir. 1995) ("Inadequacy of remedy is an exception to the exhaustion requirement.").

### 2. Judicial Notice

The defendants request that the court take judicial notice of the contents of Symyx's 2007 10-K Annual Report as filed with the United States Securities and Exchange Commission ("SEC"). Although the Ninth Circuit has found that SEC filings are subject to judicial notice, it has done so in securities fraud actions. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008). As this matter is instead an ERISA action, the court denies defendants' request.

### 3. Documents Incorporated by Reference

Finally, the defendants ask that the court consider the written Symyx and Elsevier Plan descriptions as part of this motion. In a motion to dismiss, a court typically considers "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). However, "a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Id.* Plaintiffs did not attach either plan's description to the SAC, but the SAC refers to both plans and relies on the provisions described within these documents. Plaintiffs do not dispute the authenticity of the documents and agreed at the motion hearing that the court may review them. The court therefore grants defendants' request to incorporate these documents to the SAC by reference.

### B. Claim 1: Recovery of Benefits Due, 29 USC § 1132(a)(1)(B)

A "participant or beneficiary" in an ERISA plan may file suit "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiffs' first claim is thus against only defendant Elsevier to recover benefits under the Elsevier Plan. Because severance benefits do not vest until termination and plaintiffs were terminated after Symyx purchased MDL, they must plead facts raising a plausible claim that the Elsevier Plan still applied to them when they were terminated. *See Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1160 (noting that "an employee's

3

1   rights under an ERISA welfare benefit plan do not vest unless and until the employer says they do").

2   Plaintiffs initially argued that the Elsevier plan applied to them because they never became
3   Symyx employees. (SAC ¶¶ 6,16; Opp'n 13.) At the hearing, however, they reversed course and
4   asserted that the main issue was instead whether the Elsevier Plan applied to them when they were
5   laid off, regardless of who employed them at the time. Elsevier argues that plaintiffs were always
6   MDL employees, and that in any case, benefits under the Elsevier Plan were discretionary and not
7   guaranteed post-sale.

8   No discovery is necessary for this court to determine that the Elsevier Plan is discretionary,
9   and the parties do not dispute this characterization.[2] The "case-by-case" language in the Elsevier
10  Plan indicates discretion, and it is sufficient that it only states that "the company" will exercise the
11  discretion. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 79–80 (1995). Plaintiffs assert
12  that nevertheless, discovery is required because this court must review Elsevier's application of
13  discretion *de novo*. This is an inaccurate statement of the case law. A court will review denial of
14  benefit decisions *de novo* only when the plan does *not* provide discretion. *Firestone Tire & Rubber*
15  *Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("[A] denial of benefits challenged under § 1132(a)(1)(B) is
16  to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary
17  discretionary authority to determine eligibility for benefits or to construe the terms of the plan.").

18  However, plaintiffs argue that they also need discovery to learn whether Elsevier's past
19  practice might show they were entitled to benefits under the Elsevier Plan, and cite to *Donovan v.*
20  *Dillingham*, 688 F.2d 1367 (11th Cir. 1982), in support. Yet contrary to plaintiffs' assertion,
21  *Donovan* does not speak to determining the "reality" of a plan "[w]here the written document for an
22  ERISA plan fails to meet the statutory requirements." (Opp'n 15:1–2.) Instead, *Donovan* merely
23  provided a test for determining whether an ERISA plan is "established," and went no further. *Id.* at
24  1373, 1375 n.14, 1376 (declining to determine whether plans were "maintained" because the lower
25  court had dismissed the case for lack of subject-matter jurisdiction on grounds that there was no
26  plan). Donovan even noted that a written plan was not necessary to establish an ERISA plan. *Id.* at
27  1372. As there is no dispute in the instant case that the Elsevier Plan is an ERISA plan, plaintiffs'

28  _____
[2] At the outset of the motion hearing, plaintiffs were seemingly unwilling to concede this point—one that they had already acknowledged in their motion papers. (*See* Opp'n 15:5–7.) However, by the end of the hearing, plaintiffs again agreed that the Elsevier Plan was discretionary.

4

reliance on *Donovan* is unavailing.

The other cases upon which plaintiffs rely also do not support their claims. Plaintiffs primarily cite to cases that are distinguishable as they involve obligatory severance plans or do not involve stock acquisitions. *See, e.g.*, *Bedinghaus v. Modern Graphic Arts*, 15 F.3d 1027 (11th Cir. 1994) (asset acquisition and obligatory plan); *Bellino v. Schlumberger Techs., Inc.*, 944 F.2d 26 (1st Cir. 1991) (no discretionary authority). Plaintiffs also rely extensively on *Algie v. RCA Global Commc'ns, Inc.*, 891 F. Supp. 839 (S.D.N.Y. 1994); *aff'd*, 60 F.3d 956 (2d Cir. 1995). In *Algie*, the plaintiffs were employees of a subsidiary that was purchased through a stock acquisition. After closing, the new parent company transferred the subsidiary's employees to a second subsidiary. *Algie*, 891 F. Supp. at 843–46. The plaintiffs, who were laid off during this process, successfully argued that they qualified for severance benefits under the original subsidiary's plan. *Id.*

However, plaintiffs' reliance on *Algie* in this case is misplaced as it necessarily ignores several distinguishing facts. First, unlike the Elsevier Plan, it appears that the severance plan at issue in *Algie* was not discretionary. *Algie*, 891 F. Supp. at 844 (noting that the plan stated benefits "would" be paid in certain situations). Second, the plan in *Algie* was sponsored by the purchased subsidiary—i.e., the equivalent of MDL—*not* the former parent corporation. *Algie*, 60 F.3d at 961. In contrast, the Elsevier Plan was sponsored by MDL's old parent company, Elsevier. (SAC ¶ 4 ("Elsevier paid the severance benefits out of its own general funds and administered the plan directly.").) Third, the decision in *Algie* was premised on a jury finding that the plaintiffs were still employed with the company that sponsored the severance plan at the time of their termination. *Id.* In the instant case, plaintiffs have raised no plausible argument that as MDL employees, they were still covered by Elsevier's plan following Symyx's acquisition of MDL. It is undisputed that Symyx's acquisition of MDL was a cash-for-stock transaction. (Sale Agreement §§ 1.1–1.2; SAC ¶ 1.) Plaintiffs acknowledge that Symyx acquired 100% of MDL stock and even that Elsevier is the "former owner of MDL." (SAC ¶¶ 1, 10.) The Second Circuit noted that in other cases, "the sale of the operating unit for which the employees worked ended their coverage under severance benefit plans sponsored by the old parent corporation." *Algie*, 60 F.3d at 961. *Algie* thus does not support plaintiffs' claim that the Elsevier Plan still applied to them at termination.

5

The plain language of the Sale Agreement further encumbers plaintiffs' attempt to raise a more than speculative claim that the Elsevier Plan applied to them at termination. The Sale Agreement states that "effective as of the Closing Date, the participation of each Employee . . . under the Employee Benefit Plans . . . shall cease." (Sale Agreement § 4.4(b).) It further states that "none of the Employee Benefit Plans will be transferred by [Elsevier] . . . or made available to the employees of the MDL Group Companies by [Elsevier] . . . from and after the Closing." (Sale Agreement § 4.4(b).) Plaintiffs have therefore failed to state a plausible claim for relief under 29 U.S.C. § 1132(a)(1)(B).

### C.     Claim 2: Interference with Protected Rights, 29 U.S.C. § 1140

ERISA provides that "[i]t shall be unlawful for any person to discharge . . . or discriminate against a participant . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Plaintiffs allege that as part of Symyx's acquisition of MDL, both defendants "jointly engaged" in the disclosure of information about MDL employees, including lengths of service and the benefits available under the Elsevier Plan. (SAC ¶ 3.) They say that once defendants identified the MDL employees with the longest tenure, they "jointly and cooperatively determined to terminate a disproportionate number of such employees . . . for the purpose of sharply reducing the severance benefits . . . due to such employees under the Elsevier severance plan." (SAC ¶¶ 3–4.) Plaintiffs argue that this conduct, along with defendants' attempt to "subject them to the less generous Symyx severance plan,"[3] interfered with their rights to Elsevier Plan benefits in violation of ERISA. (SAC ¶ 4, 20.)

Defendants assert that the information they disclosed about employees "is common in all acquisitions" and does not suggest any improper intent. (Mot. 16.) They claim that offering plaintiffs severance under the Symyx Plan was not discriminatory as it applied to all MDL employees—not just those with the longest tenure. They also argue that plaintiffs are engaged in a "[v]ain effort to create 'factual issues' where none exist." (Reply 1.)

A review of the Sale Agreement indicates that it required the very disclosures that plaintiffs allege were inappropriate. The Sale Agreement called for a list of all MDL employees that included

---

[3] The Elsevier Plan permitted two weeks of pay for each year of service, up to fifty-two weeks. (SAC ¶ 2; Elsevier Plan 20.) The Symyx Plan provided twenty-four weeks for Director-level positions and above and sixteen weeks for other positions. (SAC ¶ 7; Symyx Plan App'x B.)

6

the "employee's job title [and] current salary and bonus amounts." (Sale Agreement § 4.4(a).) Another provision required disclosure of each employee benefit plan, including severance plans, for the benefit of MDL employees. (Sale Agreement § 2.8(a).) Together, these provisions reflect not a conspiracy to deny plaintiffs benefits under the Elsevier Plan, but rather a desire to collect standard employment information about MDL employees as part of the acquisition.

Furthermore, the terms of the Symyx Plan do not support plaintiffs' claim that defendants conspired to apply it only to long-term MDL employees in order to save money. Plaintiffs say that the "far less generous Symyx severance plan" covered "only those MDL employees, like plaintiffs, who had accrued such lengthy service under the Elsevier severance plan and were to be terminated immediately upon the closing of the acquisition." (SAC ¶ 4; *see also* SAC ¶ 7 (Symyx Plan was "produced solely to apply to the former Elsevier employees"); SAC ¶ 16 (describing the Symyx Plan as a "secretly developed Symyx severance program, just for them" and "the new Symyx custom plan for instantly terminated MDL employees").) However, the Symyx Plan specifically states that it applied to other subsidiaries in addition to MDL. (Symyx Plan App'x B.) As a result, just as with their First Amended Complaint, plaintiffs fail to assert facts "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement" between the defendants. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007).

Yet plaintiffs insist that because their claim is not "fantastic," it should survive this motion to dismiss. (Opp'n 18.) To support this argument, plaintiffs willfully ignore recent Supreme Court precedent and cite outdated law more favorable to them. In *Twombly*, the Supreme Court rejected the "no set of facts" standard from *Conley v. Gibson* upon which plaintiffs rely. *Twombly*, 550 U.S. at 562–64 (2007). The Court reiterated this abrogation in *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1944 (2009) (noting that *Twombly* "retired" *Conley's* test). Plaintiffs' insistence on including lengthy citations to *Conley* is simply an attempt to avoid the law as it is now. To be clear, the standard is no longer whether any facts whatsoever might support plaintiffs' claim, but whether the facts as pled show a plausible claim. Plaintiffs' assertions of a conspiracy between Symyx and Elsevier are conclusory and are contradicted by documents upon which their complaint relies. Consequently, plaintiffs do not raise a plausible claim for relief under 29 U.S.C. § 1140.

7

### D.      Claim 3: Fiduciary Breach/Misrepresentation & Nondisclosure, 29 USC § 1132(a)(3)

Plaintiffs' third and final claim is for denied benefits against only defendant Elsevier. Section 1132(a)(3) of ERISA allows "a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief (i) to redress . . . violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). This is a "catchall provision" that offers relief that § 1132 "does not elsewhere adequately remedy." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 221 n.5 (2002). In the Ninth Circuit, a remedy under this section is not available if the plaintiffs also assert specific claims under § 1132(a)(1)(B). *Ford v. MCI Commc'ns Corp. Health & Welfare Plan*, 399 F.3d 1076, 1083 (9th Cir. 2005).

Elsevier argues that plaintiffs are barred from asserting a claim under this provision because they already asked for benefits under § 1132(a)(1)(B). Plaintiffs counter that they may plead alternative mechanisms for relief, and the mere fact that they are asking for money does not bar their claim. The Supreme Court has noted that claims asking for a monetary payment "almost invariably" involve money damages, which is "the classic form of *legal* relief." *Great-West*, 543 U.S. at 209–10 (citations omitted). Whether a requested remedy is equitable or legal, however, depends on the basis of the claim and the nature of the remedy. *Id.* at 213. Plaintiffs style their remedy here as "restitution," but request that restitution "in the amount of the severance benefits denied each plaintiff." (SAC 13.) The basis of the claim is that plaintiffs did not receive benefits under the Elsevier Plan, and the nature of their proposed remedy is for Elsevier to pay them those benefits in cash. As pled, this is not an equitable remedy. A § 1132(a)(3) claim is therefore unavailable to plaintiffs as they have already requested the same relief under § 1132(a)(1)(B).

Even if plaintiffs' proposed remedy were equitable, § 1132(a)(3) would still only apply to Elsevier's actions as "an ERISA fiduciary acting in its fiduciary capacity." *Ford*, 399 F.3d at 1082–83 (quoting *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004)); *see also Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (holding that "the threshold question" in a claim for breach of fiduciary duty is whether the party "was performing a fiduciary function[] when taking the action subject to complaint"). A party is a fiduciary "with respect to an ERISA-qualified plan to the extent he 'exercises any authority or control respecting management or disposition of its assets.' "

8

*Trs. of S. Cal. Bakery Drivers Sec. Fund v. Middleton*, 474 F.3d 642, 645 (9th Cir. 2007) (quoting 29 U.S.C. § 1002(21)(A)).

Plaintiffs allege that Elsevier failed to inform them of their rights and benefits under the Elsevier Plan and misrepresented the plan's benefits. (SAC ¶ 23.) They do not attack the Elsevier Plan directly—indeed, the Plan's written description states that severance benefits were not guaranteed in the event that a business entity such as MDL was sold. (Elsevier Plan 19–20.) Instead, plaintiffs claim that Elsevier published a Sale Agreement that misrepresented what would happen after closing and that Elsevier failed to tell them that Symyx planned to terminate their employment and offer less severance immediately following closing. The plaintiffs' argument relies on section 4.4(a) of the Sale Agreement, which reads:

> On the closing date, Buyer agrees to cause the MDL Group Companies to employ all Employees employed by an MDL Group Company . . . with salaries, annual target bonus amounts and benefits that are substantially comparable in the aggregate to the compensation and benefits available to such Employees as of the date [of this agreement].

(Sale Agreement § 4.4(a).) Yet this provision is not inapposite to what actually took place—plaintiffs *were* employed by MDL on the closing date. Furthermore, this section does not speak to what was to occur *following* acquisition.[4] A later section in the Sale Agreement even raises the possibility of layoffs. (Sale Agreement § 4.4(d) ("Following the Closing Date, Buyer shall cause the MDL Group Companies to assume and discharge all liabilities and obligations for the provision of notice or payment in lieu of notice . . . under the WARN Act . . . arising as a result of the transactions contemplated by this Agreement.").)

In any event, these provisions do not implicate Elsevier as an ERISA fiduciary. Neither Elsevier's knowledge about a third party's employment decisions nor the publication of the Sale Agreement involve its fiduciary duties in administering the Elsevier Plan. The primary purpose of the Sale Agreement was not to communicate information about benefit plans, but rather to secure the sale of MDL stock. *Contra Varity Corp. v. Howe*, 516 U.S. 489; *Mathews v. Chevron*, 362 F.3d 1172 (9th Cir. 2004) (both finding that the primary purpose of the communication at issue was plan-related). What Symyx did after it became the owner of MDL—even if Elsevier was aware of it in

---

[4] Plaintiffs frequently misstate this provision, claiming that the Sale Agreement "in fact" states that Symyx would employ all MDL employees "following the acquisition." (Opp'n 6.)

9

advance—has no bearing on the administration of the Elsevier Plan.  In addition, the provisions of a separate company's ERISA plan, over which Elsevier had no authority or control, do not involve Elsevier's fiduciary functions under its own plan.  Consequently, the plaintiffs' allegations in their § 1132(a)(3) claim do not implicate Elsevier's ERISA fiduciary functions.

**CONCLUSION**

Plaintiffs insist that they must have discovery in this case.  But a court will not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, --- U.S. ----,129 S. Ct. 1937, 1950 (2009).  Plaintiffs here have only raised speculative conclusions that are not plausible given the facts pled and the documents upon which they rely.

Plaintiffs amended their complaint once as a matter of course, and this court granted them the opportunity to amend their complaint a second time to address deficiencies that, nevertheless, still persist in the SAC.  The court does not believe that allowing the plaintiffs a chance to amend the complaint for a third time would make their claims any more plausible.  Consequently, the court GRANTS defendants' motion to dismiss WITH PREJUDICE.  Judgment will be entered for defendants.

**IT IS SO ORDERED.**

Dated: October 6, 2009

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C08-03657 Notice will be electronically mailed to:**

| | |
|---|---|
| Benjamin Hansel Kleine | bkleine@cooley.com, kdavis@cooley.com |
| Laura Ann Terlouw | lterlouw@cooley.com |
| Richard E. Levine | rlevine@levinebakerlaw.com |
| Steven L. Friedlander | friedlanders@cooley.com, keudaley@cooley.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**